IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JESSIE I. PAPENEK,

      Plaintiff,

v.                                                                               Case No.  23-184-JWB

DISH NETWORK, L.L.C.,

      Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to stay action and compel arbitration (Doc. 7.)  The motion is fully briefed and ripe for decision.  (Doc. 7, 9, 11.)  The motion is GRANTED for the reasons stated herein.

**I.    Standard**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, manifests a "liberal federal policy favoring arbitration."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quotations omitted).  Accordingly, the court is to "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'"  *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  When parties agree to settle their disputes by arbitration, courts must enforce that agreement "save upon grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2018).

The presumption of arbitrability falls away when "the parties dispute the existence of a valid arbitration agreement."  *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014) (citation omitted).  Determining whether a dispute is subject to arbitration is "similar to summary

judgment practice." *Id.* at 612 (quoting *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). Defendant bears an initial summary-judgment-like burden to present "evidence sufficient to demonstrate the existence of an enforceable agreement." *Smith v. Devlin Partners, L.L.C.*, No. 03-2380-KHV, 2004 WL 1490401, at *1 (D. Kan. July 2, 2004). If sufficient evidence of an enforceable agreement is presented, the burden then shifts to Plaintiff to "raise a genuine dispute of material fact regarding the existence of an agreement." *Id.* If there is a dispute of material fact, a trial or evidentiary hearing is warranted. *See Smith*, 2004 WL 1490401, at *2; *Greiner v. Credit Acceptance Corp.*, 2017 WL 586727, at *2–3 (D. Kan. Feb. 13, 2017) (discussing that courts are split on what type of hearing should be utilized to resolve a factual dispute on the existence of an agreement and that the Tenth Circuit has not provided clear guidance).

Furthermore, the court is required to liberally construe Plaintiff's pleadings because he proceeds pro se. *United States v. Pinson*, 585 F.3d 972, 975 (10th Cir. 2009). However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Plaintiff's behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

## II. Procedural History

Proceeding pro se, Plaintiff filed a letter of intent to sue Defendant in the District Court of Tulsa County, Oklahoma on April 13, 2023. (Doc. 2-2). Plaintiff claims Defendant discriminated against him because of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et. seq.* (*See* Doc. 2 at 2–3; *see also* Doc. 2-3.) Accordingly, Plaintiff's claim arises under a federal statute and the court has federal question jurisdiction under 28 U.S.C. § 1331. Defendant then removed the case to federal court pursuant to 28 U.S.C. § 1441[1] and now seeks to stay the action and compel arbitration.

---

[1] In the alternative, Defendant asserts that this court has federal diversity jurisdiction under 28 U.S.C. § 1332. Because the court has federal question jurisdiction, it does not address Defendant's diversity jurisdiction argument.

The court notes that Plaintiff's pleadings are deficient. His amended complaint fails to allege facts that support his ADA discrimination claim. (Doc. 2-3.) However, Defendant has not moved to dismiss the claims under Fed. R. Civ. P 12(b)(6). And based on the various motions filed in this lawsuit thus far, it seems Defendant understands Plaintiff's claim and the basis for it. Therefore, the court focuses on the Defendant's motion to stay proceedings an compel arbitration.

### III. Facts

Plaintiff claims he experienced an injury to his wrists and elbows after donating plasma in November of 2022. (Doc 9 at 1; Doc. 8 at 1.) As a result, he could not perform his job duties at full capacity, and in March of 2023, he went on short-term disability leave because of the pain. (Doc. 9 at 1.) Plaintiff alleges he did not receive the correct compensation while on short-term disability, and that when Defendant fired him, it wrongfully ended his health insurance coverage. (*Id.*)

The subject of this order, though, is the enforceability of the arbitration agreement in Plaintiff's employment contract with Defendant. (Doc. 7-1.) Plaintiff does not dispute that he entered into the arbitration agreement, nor does he attempt to dispute its enforceability. Nonetheless, Plaintiff takes issue with it. (Doc. 9 at 1.) He argues that enforcing the arbitration agreement will take away his right to form a class and pursue a lawsuit against Defendant for failing to correctly compensate employees on short-term disability. (Doc. 9 at 1.) Additionally, and relatedly, Plaintiff is concerned Defendant has a backlog of alternative-dispute-resolution ("ADR") cases such that any attempt to arbitrate his claims will be delayed.[2] (Doc. 9 at 1–2.)

---

[2] Defendant claims it did not tell Plaintiff that there is a backlog of ADR cases. Instead, Defendant alleges that its counsel explained to Plaintiff that civil litigation in the Northern District of Oklahoma is moving slowly because of the Supreme Court's ruling in *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2459 (2020).

Plaintiff failed to raise an issue of material fact regarding the existence and enforceability of the arbitration agreement in his response brief. Nonetheless, because Plaintiff is proceeding pro se, the court will address Defendant's arguments on the merits to ensure it has provided sufficient evidence of an enforceable arbitration agreement that is governed by the FAA.

## IV. Analysis

Defendant asserts that Plaintiff entered into an enforceable arbitration agreement that is governed by the FAA. (Doc. 7 at 1.) If Defendant is correct, the court is required to direct the parties to arbitrate any issue governed by the agreement. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, to ensure the propriety of mandating arbitration in this matter, the court will first determine if the FAA applies—or governs—the arbitration agreement, and second, address the agreement's enforceability.

### A. The FAA Applies the Arbitration Agreement

The FAA governs arbitration agreements in contracts involving commerce. *See* 9 U.S.C. § 2. This has been interpreted to include most employment contracts. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). In fact, the definition of commerce in Section 1 excludes from FAA coverage specific employment agreements: "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."[3] 9 U.S.C. § 1. Although the final clause, "any other class of workers engaged in foreign or interstate commerce" appears broad, the Supreme Court has interpreted the language as a residual clause that "should be read to give effect to the terms 'seamen' and 'railroad employees,' and should itself be controlled and defined by reference to the

---

[3] The Supreme Court has decided that the FAA "bestowed courts with the authority to decide in the first instance whether § 1's exclusions appl[y]." *Ward v. Express Messenger Sys., Inc.*, 413 F. Supp. 3d 1079, 1084 (D. Colo. 2019) (citing *New Prime Inc. v. Oliveira*, 586 U.S. 105, 110–112 (2019)).

enumerated categories of workers which are recited just before it." *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001). Hence, under the Court's interpretation, Section 1's exclusion applies to transportation-worker employment contracts. *See Ward*, 413 F. Supp. 3d at 1084. And transportation worker has been defined as one "actually engaged in the movement of goods in interstate commerce." *Cir. City Stores, Inc.*, 532 U.S. at 112 (citation omitted); *see also McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cir.1998) (discussing how the exemption is for employees "actually engaged in the channels of interstate commerce"). Therefore, so long as the employment contract does not "cover[] workers engaged in transportation," it will be covered by the FAA. *See Waffle House, Inc.*, 534 U.S. at 289.

Based on the facts alleged in the briefings, the contract at issue covers Plaintiff's employment with Defendant. Moreover, § 1's exclusion does not apply, as Plaintiff is not a transportation worker, and neither he nor Defendant allege that his employment involved engaging with the channels of interstate commerce or directly affecting goods in the movement of interstate commerce. Therefore, the FAA applies to the arbitration agreement in this case.

**B.   The Arbitration Agreement is Enforceable**

Next, the arbitration agreement in the contract must be enforceable, which requires (1) a valid agreement to arbitrate, and (2) the dispute at issue must fall within the scope of the arbitration agreement. *See Am. Fam. Mut. Ins. Co. v. Tamko Bldg. Prod., Inc.*, 178 F. Supp. 3d 1121, 1125 (D. Colo. 2016) (citing *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)).

*a. Plaintiff entered into a valid arbitration agreement*

Whether a valid arbitration agreement exists is a matter of state contract law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In Oklahoma, there are four

5

elements to a valid contract: (1) the parties are capable of contracting, (2) they consented to the agreement, (3) the contract has a lawful object, and (4) there is sufficient consideration. *See* Okla. Stat. tit. 15, § 2.

Here, Plaintiff does not raise an argument that he was unable to enter into a contract and the arbitration agreement therein. Hence, both Plaintiff and Defendant were capable of entering into a contract with one another. Second, Plaintiff does not argue that he failed to understand or appreciate the arbitration agreement, nor are there facts that indicate Plaintiff failed to read and understand the arbitration agreement. Moreover, the arbitration agreement was conspicuous: it was clearly labeled, and the last section—which stipulated that the parties voluntarily agree to arbitrate all claims—was typed in all caps and appeared directly above where Plaintiff typed his name. (*See* Doc. 7-1 at 5–7.) Thus, based on the facts in the filings, the court concludes that Plaintiff and Defendant consented to the arbitration agreement. Lastly, the object of the agreement was to avoid having to go to litigation to settle employment related disputes, and the consideration was Plaintiff's waiving his right to pursue litigation over employment disputes for gainful employment in the sales department for Defendant. (Doc. 2-2 at 1.) Therefore, there was a valid arbitration agreement between the parties.

    b. *The arbitrator is responsible for determining the scope of the agreement*

The next issue is whether the disputes between Plaintiff and Defendant fall within the arbitration agreement—otherwise known as the "question of arbitrability." *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation omitted). A court is to decide this issue "[u]nless the parties clearly and unmistakably provide" that responsibility to the arbitrator. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Under Tenth Circuit caselaw, when parties incorporate American Arbitration Association ("AAA") rules into a broad

arbitration agreement, there is a clear and unmistakable intent to delegate to the arbitrator the question of arbitrability. *See Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1248 (10th Cir. 2018). And a broad arbitration agreement is one that "refer[s] all disputes arising out of a contract to arbitration." *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005) (citation omitted).

Here, Plaintiff agreed to a broad arbitration agreement that incorporated the AAA rules. The arbitration agreement between Plaintiff and Defendant states that any claim and dispute between them will go to arbitration: [4]

> Employee and DISH mutually agree that *any* past, present or future claim, controversy and/or dispute between them, *including* without limitation *any* claim or dispute *arising out of* or related to Employee's application for employment, employment and/or termination of employment ("Claim") . . .

(Doc. 7-1 at 5) (emphasis added.) Moreover, the arbitration agreement specifically incorporates AAA rules by stating that the claims "shall be resolved by binding arbitration administered by the *American Arbitration Association*." (*Id.*) Hence, because the arbitration clause is broad and incorporates AAA rules, the parties clearly delegated the responsibility of determining the "question of arbitrability" to the arbitrator and any challenges to the arbitrability of Plaintiff's claims shall be decided during arbitration.

Therefore, the court holds that the FAA governs the arbitration agreement and that the court is required to direct the parties to arbitration.

Additionally, because the court has determined that the issues involved in this suit are referrable to arbitration pursuant to the arbitration agreement between Plaintiff and Defendant, in

---

[4] The court notes that the arbitration agreement between Plaintiff and Defendant does *not limit* the disputes covered by the agreement to employment issues, but clearly stipulates that it covers employment issues.

accordance with § 3 of the FAA, the court grants Defendant's request to stay judicial proceedings until "arbitration has been had." 9 U.S.C. § 3.

## V. Conclusion

Defendant's motion to compel arbitration and stay the proceedings is hereby GRANTED. Plaintiff's motion to compel a jury trial is rendered MOOT.

IT IS SO ORDERED. Dated this 26th day of April 2024.

                                                s/ Judge Broomes
                                                JOHN W. BROOMES
                                                UNITED STATES DISTRICT JUDGE